JOURNAL ENTRY and OPINION
{¶ 1} The court found defendant Edwin Rumph guilty of 91 counts related to a criminal enterprise to steal identities and use them for illicit profit by means of passing counterfeit checks. Rumph argues that the court lacked sufficient evidence to find him guilty because his "tangential" involvement could not suffice to establish culpability under Ohio's corrupt activity law.
 {¶ 2} Our review of the sufficiency of the evidence supporting a criminal conviction "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the [appellant's] guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Moore, 81 Ohio St.3d 22, 40, 1998-Ohio-441,689 N.E.2d 1.
 {¶ 3} Investigators became aware of this case when an informant approached them with information relating to the purchase of two motorcycles under the name of Thomas McCleskey. Interviews with the salesperson involved showed that three black males were involved in the purchase. These males were later identified as Rumph, Raymond Hensley and Donald Crosswhite. When investigators traced the social security number submitted at the time of the sale, they learned that the real McCleskey is a white male who resides in the state of Georgia and had no knowledge of the transaction.
 {¶ 4} The informant offered additional information to the effect that Henley, who worked for the license bureau, had been creating fake drivers' licenses. Those fake licenses were used as identification during the purchase of the motorcycle, as well as for other motorcycle purchases occurring shortly thereafter.
 {¶ 5} Investigators also learned from the informant that Rumph, Henley and Crosswhite had been involved in creating fake checks. They discovered a number of checks written on an account owned by Tesco Builders, a company owned by Rumph's father. Those checks were made payable to one "Germaine Dunn" but cashed by codefendant Andrea Banks.
 {¶ 6} Banks entered a guilty plea in which she agreed to testify for the state. She identified Rumph, Henley and Crosswhite as the persons running the enterprise. Banks testified that she and Henley had been in a relationship at the time she was brought into the enterprise. While at a nightclub, Henley, along with Crosswhite and Rumph, accused Banks of stealing from him. They told her that if she didn't pay them back, she would "have to work it off with cashing counterfeit checks." Rumph then told her that "you would be better messing with drug dealers than messing with us" — presumably a reference to recriminations that would follow were she to double-cross them.
 {¶ 7} The following day, Banks met with Rumph and Crosswhite. They gave her an identification card with the name "Germaine Dunn." Posing as Dunn, Banks tried to open an account in that name, but the identification card given to her had expired. Banks went to the license bureau and obtained a new identification card from Henley. Crosswhite explained that Banks would use the fake identification card to open a bank account. A large check would be deposited into that account, and then a quick series of withdrawals would be made against the account, all within a few days. The idea was to empty the account before the checks could clear and the bank would be made aware of the fraud.
 {¶ 8} Banks testified that while at Rumph's mother's house, she saw Rumph give Crosswhite the first check that Banks would deposit into the fraudulent account. The company listed on the check was "Tesco Builders." The enterprise created the fake checks by using a valid check from Tesco Builders and using a computer to scan the information from the check. Banks said she personally witnessed Rumph give Crosswhite the information relating to Tesco Builders.
 {¶ 9} Banks also testified that she learned from Crosswhite that Rumph's girlfriend worked at a club called "Christie's Cabaret." The girlfriend gave Rumph a Christie's Cabaret check. Those checks were later used to create fake checks. At one point, Banks said that she cashed between 10 and 15 per day. She gave the money to Crosswhite, who would then split the money with Henley and Rumph.
 {¶ 10} We find that this evidence constitutes more than sufficient evidence of corrupt activity. R.C. 2923.32(A)(1), states "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Hence, the state needed to establish the existence of an enterprise, that the enterprise engaged in a pattern of corrupt activity, and that Rumph participated either directly or indirectly in the enterprise.
 {¶ 11} R.C. 2923.31(C) defines an "enterprise" in part as "a group of persons associated in fact although not a legal entity * * *." The evidence showed that Rumph, Crosswhite and Henley recruited Banks and other persons to participate in their broad scheme. These persons acted under the direction and control of the three principals, and participated in the profits generated by the scheme.
 {¶ 12} R.C. 2923.31(I)(2)(c) defines "corrupt activity" as, among other things, "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" various defined offenses. The specific counts against Rumph cited violations of R.C. 2913.31
for forgery; violations of R.C. 2923.24 for possession of criminal tools; R.C. 2913.42 for tampering with records; R.C.2913.04 for unauthorized access to a computer system; R.C.2913.02 for theft; R.C. 2913.49 for taking the identity of another; and R.C. 2913.43 for securing writings by deception. As charged in the indictment, the affairs of the enterprise consisted of stealing identities, creating forged or counterfeit checks, tampering with governmental records, unauthorized use of the state computer system to create fake drivers' licenses, forging signatures and utilizing those signatures for the purposes of depriving individuals of property or services. All of these offenses are included under R.C. 2923.31(I)(2)(c) as offenses which fall within the definition of "corrupt activity."
 {¶ 13} R.C. 2923.31(E) defines a "pattern" of corrupt activity as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." The state established a "pattern" of corrupt activity with evidence showing that many fake checks were cashed, sometimes more than 10 in a single day.
 {¶ 14} Rumph's main argument is that he either acted tangentially and thus did not participate in the enterprise or that his participation was so marginal as to be legally insufficient to establish his participation in the enterprise. The evidence, when viewed in a light most favorable to the state, completely undermines this argument. Banks' testimony showed Rumph to be one of the principals of the enterprise, providing checks to be used as templates for forgery and actively splitting the proceeds with Crosswhite and Henley, the other two principals. Other testimony showed Rumph acted to recruit Banks, whom the enterprise used extensively to negotiate the fake checks. Rumph's argument is not even colorable.
 {¶ 15} As to his participation in the motorcycle scheme, it may be true that the evidence placing Rumph at the purchase of the motorcycles does not include actual statements made by him to show the extent of his participation in the scheme. Nevertheless, we must give all favorable inferences on the evidence to the state. See State v. Filiaggi, 86 Ohio St.3d 230, 247,1999-Ohio-99. Rumph was not only present when two of the motorcycles were purchased, but he drove them away. He obviously participated with Henley to create the false drivers' license for the enterprise, and the court was entitled to infer from this evidence that Rumph likewise knew that Crosswhite and Henley had done the same when purchasing the motorcycles. Given the extent of Rumph's involvement with the enterprise's scheme to steal identities and create false records, the court's judgment was entirely consistent with the facts. The assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Gallagher, J., Concur.